**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.   No. CR 10-1921 JB

EUGENE CHARLEY,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on the Defendant's Appeal of United States Magistrate Judge's Detention Order, filed July 6, 2010 (Doc. 33). The Court held a hearing on August 4, 2010. The primary issue is whether the Court can fashion a set of conditions that mitigate, to an acceptable level, the risk of danger to the community and of nonappearance that Defendant Eugene Charley presents. The Court concludes that E. Charley is not a flight risk. The Court also concludes, however, that E. Charley poses a danger to the public. Because the Court believes it can formulate conditions that will mitigate the danger E. Charley poses to an acceptable level, the Court will grant in part and deny in part his request. The Court will release E. Charley to the custody of the La Posada Halfway House, in Albuquerque, New Mexico, but will require that he be put on "lock-down." E. Charley will not be permitted to leave La Posada, except to meet with his attorney, and any visits with minors will need to be supervised by La Posada personnel.

## **FACTUAL BACKGROUND**[1]

E. Charley is sixty-four years old. He has been married for ten years and lives outside Gallup, New Mexico. Since 2003, E. Charley has been employed full time at a Gallup newspaper. He has submitted a letter from Diane Chavez of The Independent, stating that E. Charley has been an excellent, dependable employee for the newspaper. Chavez' letter also states that, whenever E. Charley is released from custody, there will be a job waiting for him. He has no significant prior criminal record since 1990, when his license was revoked for driving while intoxicated. Richard Winterbottom, E. Charley's attorney, represents that E. Charley has quit drinking and no longer suffers from alcohol-abuse problems.

E. Charley appears to have an outstanding bail-jumping charge in Idaho, but the underlying facts are uncertain. The charge appears to be based on failure to pay a $60.00 traffic ticket. E. Charley asserts that he has paid this ticket and does not know why the Idaho legal system believes it is still outstanding. Mr. Winterbottom suggests that it was likely a data-entry or administrative error. Mr. Winterbottom also notes that the Idaho judicial system does not appear to be treating the charge very seriously. The Court cannot confirm or refute Mr. Winterbottom's suggestions.

E. Charley's step-daughter, Jane Doe, accuses him of touching her underneath her clothing. This allegation was precipitated in part by urinary and odor problems that arose at the boarding school which Jane Doe attends. She alleges that the touching occurred on December 9, 2009, which she remembered because it was the same day on which a party at school took place.

---

[1] The parties agreed to proceed by proffer at the detention hearing, so the Court accepts the facts as stated at the hearing as true. See Transcript of Hearing at 4:14-20 (taken August 4, 2010)(Winterbottom). In addition to the parties' proffers, the Court has reviewed three exhibits that the Court received during the detention hearing. The Court bases its statement of the facts on the proffers and exhibits.

Jane Doe underwent a forensic interview, in which she suggested that E. Charley touched her more than once. Plaintiff United States of America elected to pursue only one charge against E. Charley because Jane Doe was definitive about one instance in which he touched her.

A Federal Bureau of Investigation ("FBI") agent called E. Charley on March 31, 2010. E. Charley voluntarily came to the FBI office in response to the telephone call. The interview took approximately three-and-one-half hours, and took place in the Navajo language. E. Charley was initially adamant about his denial of any wrongdoing. E. Charley quickly admitted that he had touched Jane Doe, but was adamant that it was only in an effort to teach her how to clean herself -- a concern that he had based on her problem with urinary infections. The FBI agent was aggressive during the interview, several times telling E. Charley that the agent knew he was guilty. The agent accused E. Charley of being a bad person for not admitting to the crime. He stated several times that E. Charley was effectively calling Jane Doe a liar, and suggested that E. Charley was something less than a man for not confessing to a "little thing" like touching Jane Doe in a sexual manner.

Near the end of the interview, E. Charley's story began to shift slightly. At one point, he stated that he had touched his step-daughter because he was curious. At another point, he admitted that he had inserted his finger into his step-daughter's vagina, but that he had intentionally not used the finger that had a hangnail, because he did not want to hurt her. Such statements suggest that E. Charley has committed the acts of which he is accused.

Also near the end of the interview, the FBI agent asked E. Charley if he would like to write an apology to Jane Doe. E. Charley agreed. The agent transcribed the verbal statement that E. Charley gave, as translated by the Navajo interpreter. That statement said, in its entirety: "my child What I did was wrong, this will never happen again, my child I love you, I missed you both. I hope

you come home on Friday, we both your mother and I miss you both.  I am sorry."  Government Exhibit 1.  E. Charley signed the note.[2]

After the interview, the FBI agent informed E. Charley that charges might be brought against him.  He also asked E. Charley whether, if charges were brought, E. Charley would come in voluntarily or must be arrested.  E. Charley stated that he would come in willingly.

Since the investigation began, Plaintiff United States of America has found no forensic evidence that would link E. Charley to the crime with which he is charged.  They have collected no semen, hairs or other fibers that would inculpate E. Charley.  Conversely, there is no forensic evidence to undermine Jane Doe's allegations.  In all respects, however, E. Charley has been cooperative with authorities.

## PROCEDURAL BACKGROUND

On April 2, 2010, based on the statement that E. Charley made, FBI Special Agent Matthew W. Collar swore out a complaint against E. Charley for Abusive Sexual Contact with an individual who has not attained the age of 12 years, in violation of 18 U.S.C. § 1153, 2244(a)(5), and 2246(2)(d).  Also on April 2, 2010, the Honorable Robert W. Ionta, United States Magistrate Judge, issued a warrant for his arrest.  Upon receiving notification that Agent Collar was looking for him, E. Charley's voluntarily presented himself to the FBI that same day.

Judge Ionta ordered that E. Charley be temporarily detained pending a detention hearing.  That detention hearing occurred on April 6, 2010, after which the Honorable Don J. Svet, United

---

[2] The Court does not have to decide, at this stage, that, as E. Charley contends, these apparent confessions, made during an aggressive interview being done through a Navajo interpreter, are dubious.  And although the Court reviewed the video interview in some detail, it also need not decide to what E. Charley confessed.  Finally, the Court need not decide how clear E. Charley's written confession is.  The Court finds, however, that he confessed to having sexual contact with Jane Doe, but also that he is not a high risk to people who are not in his custody.

States Magistrate Judge entered an order stating that, out of caution, E. Charley would be detained pending trial.  See Detention Order Pending Trial at 2, filed April 6, 2010 (Doc. 12).  The order expressly stated, however, that E. Charley could seek reconsideration of that order ten days after it was entered.  See id.

On April 14, 2010, E. Charley filed an Opposed Motion for Reconsideration of Detention Order.  See Doc. 14.  Judge Svet held a hearing on that motion on May 4, 2010.  After the hearing, Judge Svet expressed concern that E. Charley was a danger to the community, but did not find that he was a flight risk; he took the motion under advisement.  See Clerk's Minutes Before the Honorable Don J. Svet at 1, filed May 4, 2010 (Doc. 24).  Shortly thereafter, on May 13, 2010, Judge Svet entered an order denying E. Charley's motion for reconsideration and remanding E. Charley into the custody of the United States Marshall Service.  See Order, filed May 13, 2010 (Doc. 25).

On June 24, 2010, a federal Grand Jury returned an Indictment against E. Charley.  The Indictment charged E. Charley with the same conduct charged in the Complaint, i.e., abusive sexual conduct with a child under twelve years old, in violation of 18 U.S.C. §§ 1153, 2244(a)(5), and 2246(2)(d), occurring on or about December 9, 2009.  See Indictment at 1, filed June 24, 2010 (Doc. 28).

On July 6, 2010, E. Charley appealed Judge Svet's order of detention.  See Appeal of United States Magistrate Judge's Detention Order, filed July 6, 2010 (Doc. 33)("Appeal").  In the appeal, he argues largely facts, but suggests that E. Charley is neither a flight risk nor a danger to the community, at least if he is released to the custody of his wife, Celecia Charley, or to the La Posada

Halfway House in Albuquerque. See Appeal at 3.[3] The United States opposes E. Charley's motion. See Response to Defendant's Appeal of Detention Order, filed July 29, 2010 (Doc. 37)("Response"). The United States supports Judge Svet's assessment that E. Charley is a potential danger to the community if released, but they also appear to argue that E. Charley is a flight risk. See Response at 2-3. The United States relies upon the presumption of detention set forth in 18 U.S.C. § 3142(f), asserting that E. Charley has presented nothing that would rebut the presumption that he should be detained. See Response at 2-3.

On August 4, 2010, the Court held a hearing on Defendant's Appeal of Detention Order. At the hearing, E. Charley's attorney offered several reasons for placing him in custody at the La Posada Halfway House. At La Posada, he could wear an electronic monitor, and E. Charley would not be permitted to leave the facility without permission, which may be limited to meeting with his attorney. See Transcript of Hearing at 20:2-14, 23:7-12 (taken August 4, 2010)(Winterbottom). An adult would accompany any children at La Posada, and La Posada staff could supervise any visits with minors. See id. at 20:19-21, 23:5-6. Placing E. Charley in custody at La Posada would also facilitate his communications with his attorney and community. See id. at 21:3-24.

## **LAW REGARDING PRE-TRIAL DETENTION**

Section 3145(a) of Title 18 of the United States Code provides that, if a United States magistrate judge orders a defendant to be released from detention pending trial, the attorney for the United States may file a motion for revocation of the order or amendment of the conditions of release with the court having original jurisdiction. See 18 U.S.C. § 3145(a)(1). Similarly, if the magistrate judge orders that a defendant be detained, "the person may file, with the court having

---

[3] At the hearing, Mr. Winterbottom withdrew his request that E. Charley be released into the custody of C. Charley. See Tr. at 32:22-33:2 (Winterbottom).

original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The court having original jurisdiction is the district judge assigned to the case. See United States v. Cisneros, 328 F.3d 610, 615-16 (10th Cir. 2003)("The motion should be considered and ruled upon in the first instance by a district judge in the court of original jurisdiction."). In United States v. Cisneros, the United States Court of Appeals for the Tenth Circuit noted that "§ 3145 does not require that new information be available before a release or detention order can be reconsidered and revoked." 328 F.3d at 614.

Under the Bail Reform Act, a defendant may be detained pending trial only if a judicial officer finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The district court may make such a finding only after holding a hearing according to the procedures specified in § 3142(f), and the United States bears the burden of proof at that hearing. The United States must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear-and-convincing evidence. See United States v. Cisneros, 328 F.3d at 616; 18 U.S.C. § 3142(f). The Tenth Circuit also set forth factors to consider when deciding whether an individual should be released or detained:

> [I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the judicial officer must consider:
>
> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including-
>
>     (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community

>    ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
>    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
>    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

United States v. Cisneros, 328 F.3d at 617 (citing 18 U.S.C. § 3142(g)).  "If, after the hearing and consideration of the above factors, a judicial officer orders that a defendant be detained, the order must 'include written findings of fact and a written statement of the reasons for the detention.'" United States v. Cisneros, 328 F.3d at 617 (quoting 18 U.S.C. § 3142(i)(1)).  "The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo."  United States v. Cisneros, 328 F.3d at 616 n.1.

## ANALYSIS

E. Charley appeals Judge Svet's order detaining E. Charley pending trial, arguing that he is neither a flight risk nor a danger to the community, at least if he is released into a third-party's custody.  The United States contends that E. Charley should be detained, and that no conditions will guarantee that he will not entice or sexually abuse other children, or ensure his future appearances. Section 3142(e)(3)(E) of Title 18 establishes a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if . . . there is probable cause to believe that the person committed" any of several offenses, including "an offense involving a minor victim under section . . . § 2423" of Title 18.  18 U.S.C. § 3142(e)(3)(E).  The Court finds that the United States has supplied sufficient evidence to provide probable cause to believe E. Charley committed the crime alleged, and so E. Charley falls within the scope of this presumption in favor of detention.  E. Charley has presented

evidence to rebut the presumption that he is a flight risk, and the United States has failed to meet its burden to prove that prong. The Court will not find that E. Charley poses a flight risk. While the Court believes E. Charley constitutes some danger to the public, however, the Court believes it can formulate a "combination of conditions [which] will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Court will therefore grant in part E. Charley's request.

## I.    E. CHARLEY REBUTTED THE PRESUMPTION THAT HE IS A FLIGHT RISK, AND THE UNITED STATES HAS NOT MET ITS BURDEN TO PROVE FLIGHT RISK.

The Court first notes that E. Charley has rebutted the presumption that he is a flight risk. So far as the Court is aware, he has lived in New Mexico for much of his life. He has had a steady job for many years, and is apparently a good and reliable worker. He has been married for ten years, although his wife was in jail on a DWI charge at the time of the hearing on August 4, 2010. Knowing he would likely be charged with a rather serious crime, E. Charley voluntarily turned himself in when he received a telephone call from the FBI asking that he do so. He has also otherwise fully cooperated with the authorities in this matter. The Court finds this evidence rebuts the presumption in favor of detention under 18 U.S.C. § 3142(e).

The Court also finds that the United States has not shown, by a preponderance of the evidence, that E. Charley poses a risk of flight. The only two items of evidence the United States presents are: (I) E. Charley's apparent bail-jumping charge from Idaho; and (ii) the seriousness of the offense and concomitant lengthy sentence of imprisonment if E. Charley is found guilty. First, the Court has been unable to discern the exact nature of this bail-jumping charge, but E. Charley asserts that it arose from a $60.00 traffic ticket that he has paid. The United States does not appear to argue that this assessment of the facts is incorrect and did not argue at the hearing that this charge

substantially impacts the risk-of-flight analysis. Second, the Court understands that the threat of a lengthy prison sentence is likely to cause a fight-or-flight response in any person, but does not believe it weighs particularly heavily in E. Charley's case. In sum, the Court believes the facts weighing in favor of finding that E. Charley is a flight risk do not outweigh the facts weighing in favor of finding that he is not. In other words, the United States has not met its burden to show, by a preponderance of the evidence, that E. Charley is a flight risk, or that the Court cannot, through conditions, reduce that risk to acceptable levels.

## II.    THE UNITED STATES HAS PROVIDED CLEAR-AND-CONVINCING EVIDENCE THAT E. CHARLEY POSES A DANGER TO THE COMMUNITY, BUT THE COURT BELIEVES IT CAN MITIGATE THAT RISK TO ACCEPTABLE LEVELS.

The Court is more concerned about the danger E. Charley poses to the community. The evidence against E. Charley is substantial, composed of Jane Doe's accusation, a videotape of an interview that might be construed as a confession, and a written note that accompanied that oral interview. When the Court weighs the factors outlined in United States v. Cisneros, the Court believes that E. Charley poses a danger to young women.

The offense is sexual abuse of a young girl, which is an undoubtedly egregious crime. The weight of the evidence, at this point, appears to be relatively substantial. If E. Charley is guilty of the egregious crime with which he is charged, the nature and seriousness of the danger E. Charley poses to the community is substantial. Only the third factor -- the history and characteristics of E. Charley -- weighs in favor of release. E. Charley is sixty-four years old, has been married for ten years, has held a consistent job for approximately seven years, and -- according to his employer -- is a very reliable employee. Moreover, E. Charley has almost no criminal history since a DWI in 1990.

The Court believes that the United States has met its burden, based on the factors the Court

-10-

should consider, to show by clear-and-convincing evidence that E. Charley would pose a danger to the public if released without some conditions. The Court finds, however, that it can craft conditions of release that will mitigate E. Charley's danger to the public to acceptable levels. Specifically, the Court believes that release to the La Posada Halfway House on lock-down status will adequately protect the public. The Court will require that E. Charley remain at La Posada. He may leave La Posada's premises only to visit with his attorney; he must obtain prior authorization from the Court to leave La Posada before trial for any other purpose. E. Charley may have visitors at La Posada, but if any such visitor is a minor, La Posada personnel must supervise the visit. With these restrictions in place, the Court believes the risk E. Charley poses to the public will be mitigated to an acceptable level. The Court thus grants in part E. Charley's Appeal of United State's Magistrate Judge's Detention Order.

**IT IS ORDERED** that the Defendant's Appeal of United State's Magistrate Judge's Detention Order is granted in part. The Court will release Defendant Eugene Charley to the custody of the La Posada Halfway House in Albuquerque, New Mexico, but La Posada will place him under lock-down. E. Charley will be permitted to leave La Posada only to meet with his counsel, Richard Winterbottom, unless otherwise pre-authorized by the Court. E. Charley may have visitors at La Posada, but if E. Charley has any visitors who are minors, the visitation must be supervised by La Posada personnel.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory J. Fouratt
  United States Attorney
Kimberly A. Brawley
Presiliano Torrez
  Assistant United States Attorneys
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Richard A. Winterbottom
  Assistant Federal Public Defender
Albuquerque, New Mexico

    *Attorney for the Defendant*